IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

KRISTOPHER FROST,     )
         )
    Plaintiff,    )
         )
   v.       )    CASE NO. 3:17-cv-344-WKW-DAB
         )
NORTH AMERICAN    )
CAPACITY INSURANCE CO.   )
         )
    Defendant.   )

## REPORT AND RECOMMENDATION

Plaintiff, Kristopher Frost ("Frost"), sues Defendant, North American Capacity Insurance Co. ("NAC"), for breach of contract, fraud, misrepresentation, breach of the duty of good faith and fair dealing, and bad faith. (Doc. 1). Frost alleges he was a star football player for Auburn University who chose to forego the 2015 National Football League (NFL) draft to return to Auburn University for the 2015 football season. To protect himself from potential economic consequences in the event of an injury, Frost obtained a loss of value and disability policy of insurance from NAC. After suffering multiple injuries during the 2015 college football season, Frost made a claim on the subject policy. Frost alleges NAC failed to provide benefits under the policy. Before the court is Defendant North American Capacity Insurance Co.'s Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 29), Plaintiff's response in opposition (Doc. 32), and Defendant's

reply (Doc. 33).  For the reasons set forth below, it is recommended that NAC's motion (Doc. 29) be **denied**.

## I.      Jurisdiction

Frost's complaint seeks to invoke the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.  NAC contends the court lacks personal jurisdiction over it.  On September 20, 2017, the above-styled matter was referred to the undersigned for recommendation on all pretrial matters by United States District Judge W. Keith Watkins. (Doc. 22); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Bd. of Educ. of State of Ga.,* 896 F.2d 507 (11th Cir. 1990).

## II.     Procedural History

On May 26, 2017, Frost filed suit against NAC in a five-count complaint seeking compensatory and punitive damages for NAC's alleged failure to perform under the subject policy of insurance.  (Doc. 1).  NAC filed a motion to dismiss for lack of personal jurisdiction and improper venue.  (Doc. 18).  The motion sought dismissal, or alternatively transfer, of the case to the District Court in New Jersey. In response, Frost filed a memorandum in opposition, an affidavit, and a copy of the subject policy.  *See* (Docs. 20, 20-1, 20-2).  After a hearing on the matter, this court entered an order denying without prejudice NAC's motion and directed the parties

to conduct discovery targeted to the issue of NAC's personal jurisdiction.[1]  (Doc. 24).  Thereafter, NAC filed a renewed motion to dismiss for lack of personal jurisdiction.[2]  (Doc. 29).  In support, NAC submitted the declaration of Jonathan Cole, "Head Contingency and Sports Personal Accident for Swiss Re Corporate Solutions," (Doc. 29-1) and the affidavit of Deryck Malone, "Chief Financial Officer for North American Capacity Insurance Company" (Doc. 29-3).  Frost filed a memorandum in opposition (Doc. 32), and NAC replied (Doc. 33).

## III.   Background Facts

Frost, currently a resident of Georgia, alleges that on January 18, 2011, he committed to play football at Auburn University, which is located in Lee County, Alabama.  (Doc. 1, ¶¶7, 8).  Auburn University is a member of the Southeastern Conference, Division I, of the National Collegiate Athletic Association ("NCAA").  *Id.* at ¶7.  After the 2014 college football season, Frost was named an exceptional student-athlete by the NCAA, and this designation encouraged him to forego entry in the 2015 NFL draft.  *Id.* at ¶8.  Frost alleges he was predicted to be an early-round NFL draft pick, but chose to stay at Auburn University for the 2015 college football season.  *Id.*; *see also* (Doc. 20-1, ¶3).

---

[1] "Jurisdictional discovery is appropriate when there is a dispute about the 'facts that would support [the plaintiff's] allegations of jurisdiction.'" *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, No. 16-16187, 2018 WL 359998, at *5 (11th Cir. Jan. 11, 2018) (quoting *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984)).

[2] The renewed motion to dismiss did not address the venue argument raised in NAC's initial motion, and thus the court need not address it here.

The designation as an exceptional student-athlete qualified Frost to purchase loss of value and disability insurance to protect him from disabling injury during the upcoming 2015 college football season.  (Doc. 20-1, ¶3).  Prior to the 2015 college football season, Frost was contacted by Ronnie Kaymore ("Kaymore"), an independent insurance agent, seeking to sell him a loss of value and permanent disability policy of insurance.  *Id.*, ¶5.  Frost understood that the policy of insurance would be issued by Defendant, NAC, and that Kaymore represented the interests of NAC. *Id.*, ¶4.

Frost alleges that NAC is a New Hampshire corporation and a subsidiary of Westport Insurance Company, which operates as a subsidiary of Swiss Re Corporate Solutions Global Markets, Inc.  (Doc. 1, ¶2).  Frost entered into a contract and obtained a policy of loss of value and disability insurance from NAC.  *Id.*, ¶10; *see also* (Doc. 1-1).  The subject policy, which had an effective date of September 1, 2015 through August 1, 2016, provided benefits for loss of value and permanent total disability in the amounts of $2,000,000 and $2,000,000, respectively.  (Doc. 1, ¶10). The last page of the policy is signed by both the president and secretary of NAC. (Doc. 1-1 at 21).

On the Sports Insurance Proposal Form, Frost specifically identified himself as an Auburn University football player.  (Doc. 1, ¶14).  Frost alleges that NAC knew at all times that he was a student-athlete at Auburn University.  *Id.*  Frost's

4

only relationship with Kaymore was as a prospect being sold an insurance policy; he had no prior relationship with him.  (Doc. 20-1, ¶¶4, 5).  Frost did not know Kaymore lived in New Jersey.  *Id.*, ¶4. All communications with Kaymore occurred while Frost was in Auburn, Alabama, and Frost signed all documents related to the contract in Auburn.  *Id*, ¶¶5, 7.  All paperwork went through the Auburn compliance office, and Frost's point of contact for communication regarding the disability policy was the Auburn compliance office.  *Id.*, ¶7.

Before and after the 2015 football season, Frost sought treatment from healthcare providers in Alabama.  *Id.*, ¶11.  During the 2015 college football season, Frost suffered a number of injuries in Auburn, Alabama, and was treated by the medical and training staff of Auburn University.  *Id.*, ¶10.  All of the medical records related to his injuries are located in Alabama.  *Id.*  Frost has no connection with the State of New Jersey.  *Id.*, ¶12.  He has never lived or owned property in New Jersey, and has never even been there.  *Id.*

NAC is a surplus lines insurer incorporated in New Hampshire that operates on a non-admitted basis in all 50 states.  (Doc. 29-3, ¶¶2, 3).  Its home office is located in New Hampshire, and it does not maintain any corporate office in Alabama.  *Id.*, ¶4.  From 2014 through 2016, NAC wrote the following direct premium risks in Alabama: $981,911 in 2014; $484,298 in 2015; and $1,890,844 in 2016.  *Id.*, ¶5.  In

the same years, NAC wrote the following total premiums nationwide: $155,424,283 in 2014; $148,603,522 in 2015; and $159,414,506 in 2016.  *Id.*, ¶6.

NAC states it never entered into an agency agreement with Kaymore or International Specialty Insurance, Inc.; Kaymore was not authorized to act as its agent; nor was International Specialty authorized to bind NAC.  (Doc. 29-1, ¶¶3–8).

## IV.  Defendant's Renewed Motion to Dismiss

NAC filed a renewed motion to dismiss for lack of personal jurisdiction.  NAC argues it has never directed activities in Alabama, nor sought to invoke the privileges of Alabama's laws.  Because it was not incorporated in Alabama, does not have its "nerve" center there, and does not conduct virtually all of its business in Alabama, NAC contends that it cannot be subject to general jurisdiction in Alabama. Additionally, NAC argues that it does not have sufficient minimum contacts with the state to establish specific personal jurisdiction.  (Doc. 29).

In response, Frost argues that both general and specific personal jurisdiction exist where the facts support that NAC knew that the policy was written for an Alabama resident with the intention of being carried out in Alabama.  Further, NAC's acceptance of premiums on average in excess of one million dollars per year from Alabama policyholders over a three-year period demonstrates NAC's continuous and systemic ties to Alabama.  (Doc. 32).

## V.  Standard of Review

A Rule 12(b)(2) motion challenges the court's exercise of personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2).   Where the court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, as in the case here, the plaintiff bears the initial burden of establishing a *prima facie* case of personal jurisdiction over the nonresident defendant. *Cable/Home Commc'n Corp. v. Network Prods., Inc.,* 902 F.2d 829, 855 (11th Cir. 1990). "A *prima facie* case is established if the plaintiff presents sufficient evidence to defeat a motion for directed verdict." *Id.* (citations omitted). When a nonresident defendant challenging personal jurisdiction submits affidavit evidence in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc*., 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009))  If "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal Brands*, 593 F.3d at 1257 (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

## VI.   Analysis

The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis by the federal courts. *Cable/Home Commc'n Corp.*, 902

F.2d at 855 (citing *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 919 (11th Cir. 1989)).  First, the Court considers the jurisdictional issue under the state's long-arm statute.  *Cable/Home Commc'n*, 902 F.2d at 855. "Alabama's long-arm statute authorizes Alabama courts to assert jurisdiction to the fullest extent constitutionally permissible." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) (citing Ala. R. Civ. P. 4.2(a)(2); *Sieber v. Campbell*, 810 So.2d 641, 644 (Ala. 2001)).[3]  Thus, since Alabama's long-arm statute supports jurisdiction, the next step is to ensure that exercising personal jurisdiction does not violate federal due process.

In this second step, the Court must determine whether sufficient "minimum contacts" exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Cable/Home Commc'n*, 902 F.2d at 855 (citing *Internat'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).  The Eleventh Circuit has adopted a three-part test to determine whether a non-resident defendant possesses sufficient minimum contacts with a forum state so as to justify the exercise of personal jurisdiction. The court must determine "(1) whether the defendant purposefully

---

[3] Alabama's long-arm statute provides in pertinent part: "An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States" Ala. R. Civ. P. 4.2

availed itself of the forum state; (2) whether the cause of action arises out of the activities of which the defendant purposefully availed itself; and (3) whether the defendant's contacts with the forum are such that the defendant should reasonably anticipate being haled into court there." *HME Providers, Inc. v. Heinrich*, Case No. 6:09-cv-2186-Orl-31GJK, 2010 WL 557106, *3 (M.D. Fla. 2010) (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250-51 (11th Cir. 2000)).

In assessing minimum contacts, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Intern'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). As the Supreme Court has stated:

> [M]inimum-contacts analysis presupposes that two or more States may be interested in the outcome of a dispute, and the process of resolving potentially conflicting "fundamental substantive social policies" can usually be accommodated through choice-of-law rules rather than through outright preclusion of jurisdiction in one forum.

*Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 831 (11th Cir. 1992) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 483 n. 26 (1985) (citations omitted)).

The nature and quality of the required "minimum contacts" depends upon whether the type of personal jurisdiction being asserted is general or specific.

9

*Consol. Dev. Corp. v. Sherrill, Inc*., 216 F.3d 1286, 1291 (11th Cir. 2000). NAC urges that neither general nor specific jurisdiction exists here.

### A. General Jurisdiction

"General personal jurisdiction . . . arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated." *Id*. at 1291. The due process requirements for general personal jurisdiction require a showing of continuous and systematic general business contacts between the defendant and the forum. *Id*.; *see also Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (requiring "pervasive" contacts with the forum unrelated to the pending litigation to exercise general jurisdiction).

NAC argues that it is not subject to general personal jurisdiction in Alabama because it does not satisfy the three characterizations to be "at home" in Alabama. (Doc. 29 at 4–6). Specifically, it contends it is only at home in the state of its incorporation, the state of its principal place of business, or in a state where it conducts substantial operations. *Id.* On the first two factors, NAC is a New Hampshire corporation with its principal place of business there. As for the third factor, NAC submits the affidavit of chief financial officer Deryck Malone to show that the total premiums representing risks in Alabama constituted less than one-percent of NAC's total premiums nationwide for years 2014 and 2015, and was only slightly over one percent for 2016. (Doc. 29-3). NAC cites *BNSF Ry. v. Tyrell*, 137

S. Ct. 1549, 1554 (2017), in which the Court held the railway was not subject to general jurisdiction in Montana although it had over 2,000 employees in Montana and maintained 2,000 miles of track there where this constituted less than 5% of its total workforce and only about 6% of its total track mileage. Significant to the holding in that case, however, was the fact that the injured employees were not injured in the state of Montana. *Id.* at 1559 (in-state business will not suffice to permit the assertion of general jurisdiction over plaintiffs' claims "that are unrelated to any activity occurring in Montana" where the injured employees did not reside in Montana, nor were they injured there). In contrast, in the instant case, the risk being insured and the injury to the Alabama resident occurred in Alabama.

Frost submits that NAC is an underwriter who regularly writes these types of policies for student-athletes all over the country.[4] By its own admission, NAC accepted premiums from Alabama policyholders, on average, in excess of one million dollars per year for a three-year period. By issuing these policies to Frost,

---

[4] It is worth noting that this is not a case in which there is a forum selection or choice-of-law clause, which clauses courts have interpreted as indicating a deliberate affiliation with a forum. *See, e.g., Burger King*, 471 U.S. at 481–82 (holding that a choice-of-law clause providing that all disputes would be governed by the law of the forum state "reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"); *Aviation One of Fla., Inc.*, 2018 WL 359998, at *8 ("both the initial and renewal insurance policies had forum-selection and choice-of-law clauses providing that the policies were governed by the law of the Republic of South Africa, … indicat[ing] that Airborne did deliberately affiliate with the forum state.") Rather, the policy here indicates NAC obviously contemplated possible litigation in various places, as it provided that NAC "will submit to the jurisdiction of a court of competent jurisdiction within the United States of America." (Doc. 29-2 at 16).

other Alabama student-athletes, and Alabama citizens, Frost argues the requisite continuous and systemic ties to Alabama are present to give rise to general personal jurisdiction. The Eleventh Circuit has observed "[s]ince the Supreme Court's decision in *McGee v. International Life Ins*. Co., 355 U.S. 220, 223 (1957), it has been the law that a company with insurance obligations in a state in which it has no other business has submitted to the jurisdiction of the state's courts." *Mut. Serv. Ins. Co.,* 358 F.3d at 1320 (quoting *Olivier*, 979 F.2d at 833). While perhaps a closer call, NAC's activities of insuring risks in Alabama may be seen as satisfying the continuous and systemic ties necessary to confer general jurisdiction, but the court need not reach this issue given the conclusion below that specific jurisdiction exists.

   *B. Specific Jurisdiction*

   Even if a court finds general jurisdiction to be lacking, the court may nonetheless exercise specific jurisdiction over the defendant if the cause of action "arises out of" or "relates to" the defendant's in-state activity. *Burger King Corp.*, 471 U.S. at 472–73. The contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws, and the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being hauled into court there. *Sec. and Exch. Comm'n v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir.

12

1996).  A federal district court in Alabama may exercise personal jurisdiction over a nonresident defendant to the same extent that an Alabama court may, so long as the exercise is consistent with federal due process requirements. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008).

The Eleventh Circuit and Alabama courts have confirmed that brokering and issuing policies in a particular state is enough to subject a non-resident defendant to specific jurisdiction.[5]  *See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1358 (11th Cir. 2000) (Michigan insurance brokers held subject to specific personal jurisdiction in Alabama where they "put the insurance policy into the stream of commerce knowing full well that it was to be purchased by and delivered to an Alabama resident for a boat anchored in Alabama which would, of necessity, move in Alabama waters"); *Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 670 (11th Cir. 1993) (holding out-of-state insurance broker purposely availed itself of the benefits of Florida law by agreeing to procure health insurance for a Florida resident who was hospitalized in Florida); *Investors Guar. Fund, Ltd. v. Compass Bank*, 779 So.2d 185, 189 (Ala. 2000) (holding Bermuda insurer subject to suit in Alabama because it "contracted to provide a service in this state and insured

---

[5] The Eleventh Circuit recently analyzed this issue finding specific jurisdiction lacking where "both the property and risk covered by the insurance policy were outside of the forum state." *Aviation One of Fla., Inc.*, 2018 WL 359998, at *8 (distinguishing *Ruiz de Molina*, 207 F.3d at 1351, and *Cronin*, 980 F.2d at 663, which both held out-of-state insurance brokers subject to the jurisdiction of the forum state where they purposely availed themselves of the benefits of the laws of the forum state by insuring a forum resident for a loss in the forum).

a risk located in this state at the time of contracting"); *Dillon Equities v. Palmer & Cay, Inc*., 501 So. 2d 459, 462 (Ala. 1986) (defendants had "good reason to anticipate litigation within Alabama if they should breach their duty to an insured by negligently failing to procure or maintain adequate insurance coverage for that insured on property situated in Alabama.").

The Eleventh Circuit's opinion in *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc*., 207 F.3d 1351 (11th Cir. 2000), is instructive on the issue. Plaintiff, an Alabama resident, owned a boat that was moored in Alabama. *Id.* at 1354. He contacted a Florida insurance broker, who in turn contacted Michigan insurance brokers, Luellen and Worldwide Marine, about marine insurance. *Id.* The insurance brokers sent plaintiff an insurance binder stating coverage was effective on December 6, 1995. *Id.* at 1354–55. Three days later when plaintiff set sail from Alabama to Florida, the boat was damaged at sea. *Id.* at 1355. Plaintiff made a claim on his policy for the loss, but it was denied. *Id.* He sued the insurance brokers in Alabama District Court alleging that he was misled into believing that insurance had been obtained before he set sail, when it was actually not obtained until after the boat was damaged. *Id.* Luellen and Worldwide moved to dismiss for lack of personal jurisdiction, and the district court, construing the motion as one for summary judgment, granted it. *Id.*

14

On appeal, Ruiz de Molina argued jurisdiction in "Alabama was proper because these defendants expected to make a commission off selling an insurance policy to an Alabama resident that covered a boat that would be departing an Alabama port once a binder was issued." *Id.* at 1356 (internal quotations omitted). Luellen and Worldwide responded that specific jurisdiction was lacking because although they knew the boat was owned by an Alabama resident and anchored in Alabama, they never had any direct contact with plaintiff in Alabama and all of their dealings were with the Florida broker in Florida. *Id.* at 1357. Thus, they contended they did not have the necessary "minimum contacts" with Alabama to support its exercise of jurisdiction over them. *Id.*

The Eleventh Circuit reversed, observing

> Although it is true that these defendants had no direct contact whatsoever with Alabama in connection with these events, the following facts are assumed to be true for the purposes of this motion: Luellen and Worldwide Marine chose to do business with an Alabama resident; they expected to receive a benefit from that business; they knew that the insurance they were procuring was for a boat owned by an Alabama resident which was located in Alabama and which would necessarily traverse Alabama waters; they undertook to and did procure insurance for the boat; they authorized [the Florida broker] to issue a binder for that insurance and to send it to Ruiz de Molina in Alabama; and they received a commission from the insurance premium.

*Id.* Thus, the court concluded these facts, if proved at trial, were sufficient to establish that Luellen and Worldwide Marine purposefully availed themselves of the opportunity to do business *with* an Alabama resident *in* Alabama. *Id.* (emphasis in

original).  The court went on to explain that "a nonresident defendant may be subject to specific jurisdiction even if his actions giving rise to the suit occurred outside the forum state and he had no direct contact with the plaintiff." *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)).

Applying a similar analysis to the facts here, the court finds sufficient minimum contacts exist to confer specific jurisdiction over NAC.  Construing all reasonable inferences in Frost's favor, the insurance policy at issue created an insurance obligation in the state of Alabama.  NAC issued a policy intended to cover a loss in Alabama by an Alabama resident.  NAC was aware that Frost was a student-athlete who would be playing football in Alabama. In connection with his application for disability insurance, Frost had to submit and NAC had to review Frost's draft prospects, physical and playing history, and medical records.  The policy required Frost to provide NAC with a completed Application and Medical Report, and all of this documentation was submitted through the Auburn Compliance Office in Alabama. The Application identified Frost as a football player for Auburn University, and the medical report contained medical records solely from providers in the state of Alabama.  NAC received premiums for the policy that were paid by Frost from Alabama.  The court finds unavailing NAC's contention that it had no contacts with Alabama.

Here, NAC, through Kaymore, procured a loss of value and permanent total disability policy of insurance to cover Frost, who at the time was a student-athlete, attending school and playing football at Auburn University in Alabama. These facts support a finding that specific personal jurisdiction is proper in this court. It is apparent to the court that NAC had sufficient contacts with the state of Alabama such that it purposefully availed itself of the privilege of conducting activities within the forum, and invoked the benefits and protections of its laws. Thus, NAC had good reason to anticipate litigation in Alabama in the event it breached its duties under the policy.

### C. Fair Play and Substantial Justice

Once a plaintiff has shown that the defendant had minimum contacts with the forum state, the court then must consider whether the exercise of jurisdiction comports with the "traditional notions of fair play and substantial justice." *Internat'l Shoe Co*., 326 U.S. at 320. The court should evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S 105 477 (citations and internal quotations omitted).

17

Evaluating these factors in light of the facts here, the court concludes that exercising jurisdiction over this litigation comports with the notions of fair play and substantial justice. While having to defend the lawsuit in Alabama may cause NAC a slight burden, it certainly would not be a significant burden for NAC who is a large insurer that routinely issues these types of policies throughout the country. Moreover, the Eleventh Circuit has recognized "modern methods of transportation and communication have lessened the burden of defending a suit in a foreign jurisdiction." *Mut. Serv. Ins. Co.*, 358 F.3d at 1320 (citations and internal quotations omitted).

The second factor weighs heavily in Frost's favor in that Alabama has a strong interest in adjudicating the dispute to ensure the protection of its citizens' rights from non-admitted insurers such as NAC. *See, e.g., Posner v. Essex Ins. Co., Ltd*., 178 F.3d 1209, 1221 (11th Cir. 1999) ("Florida ... [has] a strong interest in seeing this matter resolved in Florida, as the dispute involves the alleged failure to pay claims under insurance policies issued by a foreign company to cover Florida property owned by a Florida resident."); *McGee v. Int'l Life Ins. Co*., 355 U.S. 220, 223 (1957) ("It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable.");

*Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 287 (4th Cir. 1987) ("Virginia has a compelling interest in providing a forum for its residents when insurers refuse to pay a claim.").

On the third factor, Frost has a compelling argument that Alabama is the more convenient and effective forum.  Although Frost may no longer live in Alabama, he lives in Georgia which is much closer to Alabama than New Jersey, and his medical providers, trainers, school administrators, and records are located in Alabama.  Frost attended school in Alabama, received medical treatment there, entered into the contract there, and communicated and completed the application through the University's compliance office which is in Alabama.  This factor weighs in favor of the court retaining jurisdiction.  Similarly, on the final factors, judicial efficiency and economy support the case being litigated in Alabama where the majority of the witnesses are located and where the alleged wrong occurred.  Accordingly, the court finds the exercise of personal jurisdiction over NAC does not violate due process.

## VII.  Conclusion and Recommendation

Accordingly, for the reasons stated, it is **recommended** that Defendant North American Capacity Insurance Co.'s Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 29) be **denied**.  If the court adopts this report and recommendation, it is further **recommended** that NAC be directed to respond to Frost's Complaint within fourteen days of the order adopting the recommendation.

**VIII.  Notice to Parties**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  Accordingly, it is hereby **ORDERED** that any objections to the Report and Recommendation shall be filed on or before **May 4, 2018**.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1; see also 28 U.S.C. § 636(b)(1).

**Respectfully Recommended** this 20th day of April, 2018.

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE